**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **TRAVIS ERVIN,** ) | |
| ) | |
| **Plaintiff,** ) | **Case: 1:26-cv-02500** |
| ) | |
| **v.** ) | |
| ) | |
| **NEW SOCIAL OAKBROOK, LLC d/b/a** ) | |
| **PINSTRIPES,** ) | **Jury Trial Demanded** |
| ) | |
| **Defendant.** ) | |

**COMPLAINT**

Plaintiff, Travis Ervin  ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against New Social Oakbrook, LLC d/b/a Pinstripes, ("Defendant"), and in support states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1.      This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") seeking redress for Defendant's race-based discrimination, race-based harassment, and retaliation for Plaintiff's engagement in protected activity.

2.      This lawsuit further arises under Illinois common law, seeking redress for Defendant's retaliatory discharge of Plaintiff's employment in response to Plaintiff's protected activity.

**JURISDICTION AND VENUE**

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

4.      Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

5.      This Court has supplemental jurisdiction of Count V pursuant to 28 U.S.C. §1367

## ADMINISTRATIVE PREREQUISITES

6.      All conditions precedent to jurisdiction have been satisfied.

7.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

8.      Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

9.      This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

10.      Plaintiff, Travis Ervin, is a natural person, over 18-years-of-age, who at all times relevant to the allegations of this Complaint resided in Cook County, Illinois.

11.      Defendant, New Social Oakbrook, LLC d/b/a Pinstripes, whose address is 7 Oakbrook Center, Oak Brook, IL 60523-1809, is a LLC specializing in the hospitality and entertainment industry that at all times material to the allegations in this Complaint was doing business in and for DuPage County, Illinois.

12.      Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

13.      During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

14. Plaintiff worked for Defendant as an Events Server from on or about November 1, 2025 until Plaintiff's unlawful termination on or about January 22, 2026.

15. Plaintiff met or exceeded Defendant's performance expectations throughout the entire duration of his employment.

16. As an Events Server, Plaintiff's job duties included but were not limited to the following:

- Setting up and preparing event spaces;

- Serving food and drinks to customers; and

- Taking meal orders.

17. Plaintiff is African American/Mixed Race and is a member of a protected class because of his race.

18. Since at least the beginning of his employment, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within his protected class and has subjected Plaintiff to a hostile work environment on the basis of race, violating Title VII and Section 1981.

19. In or around November 2025, Plaintiff was regularly subjected to Hispanic servers using discriminatory and offensive racial slurs.

20. Plaintiff was subjected to repeated use of the racial slur "nigger", which Plaintiff found deeply offensive and was distressed by.

21. In addition to the racial slurs, two food runners who were on the autism spectrum were repeatedly referred to using the word "retarded" by certain employees, further contributing to a hostile work environment.

22. The discriminatory conduct, including racial slurs and derogatory comments towards individuals with disabilities, occurred consistently in Plaintiff's presence from the beginning of Plaintiff's employment, creating a toxic and hostile workplace environment.

23. Plaintiff directly opposed the use of the slur "nigger" with the servers who utilized the slut, instructing them not to use such language in his presence.

24. On or about December 2, 2025, Plaintiff reported the racial slurs and the use of the word "retarded" directed at autistic coworkers to his serving manager, Peter Mitchell (Caucasian), thereby engaging in protected activity.

25. Despite Plaintiff's report of discriminatory conduct, no corrective action was taken, and the discriminatory environment of severe and pervasive conduct continued.

26. Plaintiff continued to routinely report these issues verbally and in-person throughout his employment, thereby engaging in protected activity.

27. The continued discriminatory conduct caused Plaintiff heightened emotional distress.

28. Plaintiff informed Peter of his distress with the discriminatory conduct he was subjected to, stating that he did not want to work with employees who engaged in discriminatory conduct based on his race, thereby engaging in protected activity.

29. Despite Plaintiff's report, Peter did not take adequate steps to address Plaintiff's complaints or resolve the situation.

30. On or about January 10, 2026, Plaintiff provided another verbal report to Peter, thereby engaging in protected activity.

31. Plaintiff expressed frustration over the continued use of discriminatory slurs, thereby engaging in protected activity.

32. Plaintiff asked Peter for the contact information for Human Resources Department (HR) to escalate the matter.

33. Peter alleged Plaintiff that he did not know how to reach or contact HR.

34. Plaintiff also inquired about the possibility of being transferred to another of Defendant's locations.

35. Peter alleged that he did not know how to facilitate such a transfer.

36. After Plaintiff raised his concerns, Peter assured him that he would address the issue and encouraged Plaintiff to stay at the job.

37. Despite Peter's encouragement to Plaintiff, on or about January 11, 2026 Defendant arbitrarily removed Plaintiff from the work schedule.

38. Defendant never scheduled Plaintiff again after that date.

39. Plaintiff repeatedly texted Peter over the following days and weeks, asking whether he still had a job and when he would be scheduled to work again.

40. However, Peter consistently avoided answering these inquiries.

41. On or about January 22, 2026, after two weeks of avoiding Plaintiff's messages, Peter responded Plaintiff by text.

42. Peter falsely claimed that Plaintiff had "put in his 2 weeks notice."

43. This claim was contradicted by Plaintiff's prior communications, in which he had never resigned and had only expressed frustration over the discriminatory environment he was forcibly subjected to.

44. Peter further claimed that Plaintiff had not been scheduled due to failing to wear the proper work attire, including jeans, socks, and a belt.

5

45. Plaintiff had never been warned or disciplined for any uniform violation during his employment.

46. In the same text message, Peter wrote that it was "best to just part ways," effectively terminating Plaintiff's employment.

47. Plaintiff had never resigned or quit, and his repeated requests to be placed back on the schedule were ignored by Peter.

48. Plaintiff was unlawfully terminated because of his race (African American/Mixed Race) on or about January 22, 2026.

49. Plaintiff was retaliated against and his employment was ultimately terminated for opposing unlawful discrimination and harassment and for exercising his protected rights.

50. Plaintiff reported the race-based discrimination and harassment to Defendant.

51. Plaintiff was targeted for termination because of his race (African American/Mixed Race).

52. Plaintiff suffered multiple adverse employment actions, including but not limited to being unlawfully terminated after repeatedly reporting race-based discrimination and harassment.

53. There is a basis for employer liability for the race-based harassment and discrimination to which Plaintiff was subjected.

54. Plaintiff can show that he engaged in statutorily protected activity—a necessary component of his retaliation claim—because Plaintiff reported race-based harassment and discrimination, including the use of racial slurs by coworkers, and discriminatory comments directed toward autistic coworkers, to his serving manager, Peter, throughout his employment.

## COUNT I
### Violation of 42 U.S.C. §1981
### (Race-Based Discrimination)

55. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

56. Section 1977 of the Revised Statutes, 42 U.S.C. §1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

57. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race discrimination in violation of 42 U.S.C. §1981.

58. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

59. Defendant's unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under §1981.

60. As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)

61.     Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

62.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

63.     Plaintiff is a member of a protected class under Title VII, due to Plaintiff's race (African American/Mixed Race).

64.     Plaintiff met or exceeded performance expectations.

65.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

66.     Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

67.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

68.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Harassment)

69.     Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

70. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

71. Defendant knew or should have known of the harassment.

72. The race-based harassment was severe or pervasive.

73. The race-based harassment was offensive subjectively and objectively.

74. The race-based harassment was unwelcomed.

75. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. due to Plaintiff's race, African American/Mixed Race.

76. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

77. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

78. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

79. Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq*. due to Plaintiff's race (African American/Mixed Race).

80. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race-based discrimination and harassment.

81. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

82. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of race-based discrimination and harassment.

83. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

84. Plaintiff's suffered adverse employment action in retaliation for engaging in protected activity.

85. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff reporting race-based discrimination and harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

86. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

87. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT V
**Illinois Common Law**
(Demand for Relief for Retaliatory Discharge)

88. Plaintiff repeats and re-alleges all preceding paragraphs as though fully restated herein.

89. Illinois common law recognizes a cause of action for retaliatory discharge.

90. Plaintiff's employment was terminated by the Defendant.

91.     Plaintiff's discharge was in retaliation for action of the Plaintiff's protected activity of reporting unlawful discriminatory conduct against individuals with a disability, specifically Plaintiff's report to his serving manager, Peter Mitchell, of the repeated use of the word "retarded" directed at autistic employees of Defendant by other employees.

92.     The termination of Plaintiff's employment violates a clear mandate of public policy including Illinois's public policy favoring workplace compliance with legal standards of non-discrimination.

93.     By reason of Defendant's retaliation, Plaintiff suffered severe harm, and is entitled to all legal and equitable remedies under common law.

94.     Defendant intentionally retaliated against Plaintiff after he engaged in protected activity.

95.     Plaintiff was discharged in retaliation for Plaintiff's reports, including reports of unlawful discriminatory conduct by employees of Defendant.

96.     As a result of said retaliatory discharge, Plaintiff has suffered damages, including but not limited to loss of earnings, loss of ability to earn money, and mental anguish.

97.     The losses have occurred in the past and will continue in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

   a.     Back pay;

   b.     Payment of interest on all back pay recoverable;

   c.     Front pay;

   d.     Loss of benefits;

11

e.  Compensatory and punitive damages;

f.  Reasonable attorneys' fees and costs;

g.  Award pre-judgment interest if applicable; and

h.  Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury. Dated this 5$^h$ day of March, 2026.

*/s/Yasmeen Elagha, Esq.*
Yasmeen Elagha, Esq.
Mohammed O. Badwan, Esq.
Atlas Law Center, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, IL 60148
Phone (630) 575 - 8181
Fax (630) 575 - 8188
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com
Attorneys for Plaintiff

12